UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| T&K ASPHALT SERVICES, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| DDRC GATEWAY, LLC, | * | |
| | * | Civil Action No. 13-11599-JLT |
| Defendant, | * | |
| | * | |
| v. | * | |
| | * | |
| CONTROL BUILDING SERVICES, et al., | * | |
| | * | |
| Third-Party Defendants. | * | |

MEMORANDUM

October 8, 2013

TAURO, J.

I.   Introduction

This case arises from a relatively simple contract dispute between Plaintiff T&K Asphalt, Inc. and Defendant/Third-Party Plaintiff DDRC Gateway, LLC,[1] originally filed in Massachusetts state court. Much to the chagrin of both Plaintiff and Defendant, the case has found its way into federal court after being removed here by Third-Party Defendants Control Building Services, Inc. ("CBS"), Control Equity Group, Inc. ("CEG"), Neal Turen, and Edward Turen (collectively: "Third-Party Defendants"). Presently before this court is Defendant's

---

[1] For simplicity's sake, this court will simply refer to DDRC as "Defendant."

Motion to Remand [#5].[2] For the following reasons, Defendant's Motion to Remand is ALLOWED.

II.  Background

    A.  Facts

Plaintiff is a Massachusetts corporation engaged in the asphalt paving and curbing business. Defendant is a Delaware limited liability company. Defendant is a corporate affiliate of DDR Corp. ("DDR"),[3] and owns certain property in Everett, Massachusetts ("Everett Property").[4] On October 23, 2012, Plaintiff and Defendant executed a written contract.[5] The contract called for Plaintiff to undertake parking lot repairs at the Everett Property in exchange for payment of $97,169.[6] Despite Plaintiff having completed all work called for in the contract, Defendant has not paid Plaintiff any of the money owed.[7] Plaintiff has made repeated demands for payment, including a written demand dated November 6, 2012.[8]

Third-Party Defendants CBS and CEG are New Jersey corporations with principal places of business in Seacaucus, New Jersey.[9] Third-Party Defendant Edward Turen is a New Jersey

---

[2] At the October 2, 2013 hearing on this motion, Plaintiff indicated that it supports Defendant's Motion to Remand.

[3] Mem. Law Supp. Mot. Remand [#6] Ex. 2 [hereinafter Third-Party Compl.], at 7.

[4] Third-Party Compl., 7.

[5] Mem. Law Supp. Mot. Remand [#6] Ex. 1 [hereinafter Compl.], at 2.

[6] Compl., 8.

[7] Compl., 2.

[8] Compl., 2.

[9] Third-Party Compl., 9.

resident and is the CEO and a principal shareholder of CEG and CBS.[10] Third-Party Defendant Neal Turen is also a New Jersey resident and serves as Executive Vice President of CEG and CBS.[11] Oxford Building Services, Inc. ("Oxford"), which is not a party to this action, is a member of a group of affiliated organizations referred to here as the "Control Organization."[12] CEG serves as the corporate parent of the Control Organization.[13] Third-Party Defendant Edward Turen is the CEO and a principal shareholder of Oxford and Third-Party Defendant Neal Turen is the President and a principal shareholder of Oxford.[14] The Control Organization is in the business of providing facility maintenance services to commercial properties and property owners.[15]

In 2007, DDR began negotiations with members of the Control Organization's management, including Edward and Neal Turen, to execute an agreement whereby the Control Organization would "coordinate the provision of facility maintenance services at all of DDR's properties in the United States."[16] This included the Everett Property. CEG decided that the named party in the agreement with DDR would be Oxford.[17] These negotiations resulted in the execution of a formal Services Agreement in January 2008.[18] Pursuant to this arrangement,

---

[10] Third-Party Compl., 9.

[11] Third-Party Compl., 10.

[12] Third-Party Compl., 7-8.

[13] Third-Party Compl., 9.

[14] Third-Party Compl., 9-10.

[15] Third-Party Compl., 10.

[16] Third-Party Compl., 10-11.

[17] Third-Party Compl., 11.

[18] Third-Party Compl., 11.

Oxford was to act as the conduit through which monies would be paid to all third parties providing services to DDR and Defendant's properties. This meant that Oxford was responsible for paying, among other service providers, Plaintiff for the work it undertook at the Everett Property. Oxford was to submit invoices from service providers to DDR. DDR would then pay Oxford and Oxford would pay the service providers.[19] Paragraph 3 of the Services Agreement provided that so long as DDR timely paid Oxford, Oxford would bear all liability for late payment of invoices, including all penalties and fees.[20] CBS executed a Guaranty of the obligations set forth in the Services Agreement.[21]

On or around December 23, 2011, CEG, CBS, and Oxford, at the direction of Edward and Neal Turen, took out an asset-based revolving credit facility.[22] Pursuant to this loan, the lender took a security interest in substantially all of the borrowing entities' assets.[23] Under this arrangement, Oxford's operating accounts were maintained as zero-balance accounts and swept on a daily basis by CEG in order to service the revolving credit facility.[24] In short, the members of the Control Organization were, unbeknownst to DDR and Defendant, using monies paid to Oxford to service their own debt obligations rather than paying DDR and Defendant's service providers, including Plaintiff.[25]

---

[19] Third-Party. Compl., 11.

[20] Third-Party Compl., 11-12.

[21] Third-Party Compl., 12.

[22] Third-Party Compl., 12.

[23] Third-Party Compl., 12.

[24] Third-Party Compl., 12.

[25] Third-Party Compl., 12-13.

Oxford, at the direction of Edward and Neal Turen, continued to issue invoices to DDR for services provided at the Everett Property, knowing that the monies would not be used to pay service providers.[26] This continued until January 2013, when Edward Turen notified DDR that it was unable to pay invoices as they came due and identified approximately $11.1 million in outstanding invoices relating to DDR's various properties that had not been paid.[27] Defendant maintains that it timely paid all invoices related to the Everett Property. Oxford declared bankruptcy in the United Stated Bankruptcy Court for the District of New Jersey on February 8, 2013.[28]

    B.    <u>Procedural History</u>

On April 2, 2013, Plaintiff filed its Complaint in Middlesex Superior Court. On May 20, 2013, Defendant filed its Answer and Third-Party Complaint. On July 3, 2013, Third-Party Defendants removed the action to this court. On August 1, 2013, Defendant filed a <u>Motion to Remand</u> [#5]. On August 2, 2013, Third-Party Defendant Neal Turen filed a <u>Motion to Dismiss, Strike, or Transfer Third-Party Complaint</u> [#8]. On August 30, 2013, Third-Party Defendants filed an <u>Assented-to Motion for Stay of Briefing Schedule</u> [#16] on the Motion to Dismiss, Strike, or Transfer, pending the outcome of the Motion to Remand, which this court ALLOWED. On October 2, 2013, this court held a hearing on Defendant's Motion to Remand.

III.    <u>Discussion</u>

The questions before this court are whether Third-Party Defendants are entitled to remove this action here in the first place and, if this court has subject matter jurisdiction, whether

---

[26] Third-Party Compl., 14.

[27] Third-Party Compl., 14.

[28] Third-Party Compl., 15.

remand is nonetheless required by 28 U.S.C. § 1334(c)(2). Because this court concludes that it does not have subject matter jurisdiction, only the first question need be addressed. Third-Party Defendants originally sought removal of this action pursuant to 28 U.S.C. §§ 1441, 1332, 1334, and 1452.[29] Defendants argued that third-party defendants are not entitled to remove on the basis of diversity,[30] and Third-Party Defendants subsequently conceded that diversity does not provide a basis for jurisdiction.[31] Instead, Third-Party Defendants maintain that 28 U.S.C. §§ 1452 and 1334(b) allow them to remove the action because it is "related to" Oxford's bankruptcy proceeding.

Removal statutes are to be "'strictly construed against removal and doubts resolved in favor of remand.'"[32] Moreover, "the burden is upon the removing party to show that federal subject matter jurisdiction exists, that removal was timely, and that removal is proper."[33] Pursuant to § 1452, a party may remove a matter to federal district court if the court has jurisdiction under § 1334. Section 1334, in turn, grants federal district courts original jurisdiction over civil proceedings "related to cases under title 11."[34] Whether a district court has related-to jurisdiction over a case turns on "'whether the outcome of that proceeding could conceivably

---

[29] See Notice of Removal [#1].

[30] Mem. Law Supp. Mot. Remand [#6], 4.

[31] Opp'n Pl.'s Mot. Remand [#18], 10 ("The Third-Party Defendants do not contest that 'related to' subject matter jurisdiction is the only basis for jurisdiction.").

[32] Kingsley v. Lania, 221 F. Supp. 2d 93, 95 (D. Mass. 2002) (quoting Therrien v. Hamilton, 881 F. Supp. 76, 78 (D. Mass. 1995)).

[33] Therrien, 881 F. Supp. at 78.

[34] 28 U.S.C. § 1334(b).

have any effect on the estate being administered in bankruptcy.'"[35] The proceeding must "'potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate.'"[36]

Two other federal district courts, in cases involving the same parties and Service Agreement, have rejected Third-Party Defendants' arguments that there is related-to jurisdiction over similar state-law claims simply because there may be some hypothetical effect on the Oxford bankruptcy in the future.[37] This court agrees with the reasoning of those courts and finds that it does not have related-to jurisdiction in this case. The only basis to find related-to jurisdiction is the possibility that Third-Party Defendants *may* have claims for indemnity against Oxford. Oxford itself is not a party to this action and the only claims arise under state law. Although CBS is the guarantor for Oxford's obligations in the Services Agreement, there is no contractual provision for indemnity or contribution. It is unclear that Third-Party Defendants will even have valid indemnity claims against Oxford: Defendant's claims against Third-Party Defendants are based on their personal wrongdoings and Third-Party Defendants have not explained the basis for a right to indemnity.[38]

---

[35] In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991), abrogated in part on other grounds, Conn. Nat'l Bank v. Germain, 503 U.S. 249 (1992) (quoting Pacor v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)).

[36] Id. (quoting In re Smith, 866 F.2d 576, 580 (3d Cir. 1989)).

[37] See Thomas Suddarth & Son Asphalt Paving Co. v. Developers Diversified Realty Corp., No. 13-00232-NBF (W.D. Pa. Aug. 30, 2013); Ace Asphalt of Ariz., Inc. v. DDR Corp., No. 13-1163-PHX-MHB (D. Ariz. Aug. 28, 2013).

[38] See Third-Party Compl.; Ace Asphalt, No. 13-1163-PHX-MHB, at *5 ("Defendants have failed to provide any support demonstrating any such right to indemnification or contribution exists for their own independent and alleged tortious acts.").

In sum, Third-Party Defendants have failed to meet their burden to show that this action is "related to" the Oxford bankruptcy. The connection of this case to the Oxford Bankruptcy is tenuous at best and the fact that Third-Party Defendants might seek indemnity or contribution in the future is far too insubstantial a basis upon which to find jurisdiction. Consequently, this court lacks subject matter jurisdiction over this action.

IV.	Conclusion

For the foregoing reasons, Defendant's Motion to Remand is ALLOWED.

AN ORDER HAS ISSUED.

/s/ Joseph L. Tauro
United States District Judge